IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

MARCUS COLEMAN,

    Plaintiff,

    v.

CITY OF SOUTH FULTON et al.,

    Defendants.

CIVIL ACTION FILE
NO. 1:22-CV-814-TWT

**OPINION AND ORDER**

This is a civil rights action. It is before the Court on the Defendant City of South Fulton ("South Fulton")'s Motion for Summary Judgment [Doc. 26] and the Defendant Solomon Muhammad's Motion for Summary Judgment [Doc. 28]. For the reasons set forth below, the Defendant South Fulton's Motion for Summary Judgment [Doc. 26] is DENIED, and the Defendant Muhammad's Motion for Summary Judgment [Doc. 28] is GRANTED in part and DENIED in part.

**I.  Background[1]**

This case arises from the allegedly unlawful detention of the Plaintiff Marcus Coleman by the Defendant Solomon Muhammad at the scene of a

---

[1] The operative facts on the Motions for Summary Judgment are taken from the parties' Statements of Undisputed Material Facts and the responses thereto. The Court will deem the parties' factual assertions, where supported by evidentiary citations, admitted unless the respondent makes a proper objection under Local Rule 56.1(B).

traffic accident. (Def. Muhammad's Statement of Undisputed Material Facts ¶¶ 1–2). Muhammad is a police officer for the Defendant City of South Fulton. (*Id.* ¶ 2). On January 29, 2021, Muhammad reported to the scene of a multicar traffic accident and began collecting information from the individuals involved to prepare his accident report. (*Id.* ¶ 2; Def. South Fulton's Statement of Undisputed Material Facts ¶ 4). While Muhammad was in his patrol car preparing the report, Coleman approached his car on the passenger side and asked, while filming the encounter on his phone, why there wasn't an officer directing traffic around the accident. (Def. Muhammad's Statement of Undisputed Material Facts ¶¶ 6–7). After Muhammad instructed Coleman to "stand by," Coleman proceeded to walk toward the scene of the accident and stated to the emergency personnel and individuals involved in the accident that the officer would be of more assistance directing traffic. (*Id.* ¶¶ 8–11). Muhammad then exited his patrol car and asked Coleman to go back to his vehicle because he was working a crime scene. (*Id.* ¶¶ 14–18). Coleman responded that he did not have to get back into his car and continued walking toward the accident scene. (*Id.* ¶¶ 19–21). After a brief exchange about the South Fulton police chief, Muhammad and Coleman engaged in a struggle that ultimately resulted in Muhammad placing Coleman in handcuffs by threatening the use of his taser in response to Coleman's noncompliance with his instructions. (*Id.* ¶¶ 23–33). After Muhammad placed Coleman in the back of his patrol car, Muhammad requested that a supervisor come to the scene; he

also readjusted Coleman's right handcuff after Coleman complained of it being too tight and secured Coleman's vehicle at his request. (*Id.* ¶¶ 33–37). When Muhammad's supervisor arrived approximately 20 minutes later, he spoke with Muhammad and then spoke to Coleman and informed him that Muhammad was detaining and investigating him for obstruction. (*Id.* ¶¶ 39–42). The supervisor then released Coleman without issuing him a citation. (*Id.* ¶¶ 43–46).

On January 26, 2022, Coleman brought suit against the Defendants in Fulton County Superior Court, asserting fourteen counts in total. Against both Muhammad and South Fulton, he brings claims of negligence, intentional and negligent infliction of emotional distress, fraudulent-intentional and negligent misrepresentation, tortious interference with economic advantage, assault, and battery. Against Muhammad, Coleman brings claims of libel per se, civil rights liability under 42 U.S.C. § 1983, and false arrest and imprisonment. And against South Fulton, he brings claims of unfair business practices, breach of the covenant of good faith and fair dealing, and respondeat superior. Muhammad and South Fulton both now move for summary judgment as to all of Coleman's claims.

## II.   Legal Standard

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists, and that the movant is entitled to judgment as a matter

3

of law. Fed. R. Civ. P. 56(a), (c). The court should view the evidence and draw any inferences in the light most favorable to the nonmovant. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970). The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). The burden then shifts to the nonmovant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact exists. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986).

### III. Discussion

South Fulton and Muhammad move for summary judgment, arguing that no genuine dispute of material fact exists as to any of Coleman's claims and therefore that they are entitled to judgment as a matter of law on all of his claims. (Br. in Supp. of Def. South Fulton's Mot. for Summ. J., at 7; Br. in Supp. of Def. Muhammad's Mot. for Summ. J.,[2] at 1). In response, Coleman contends that genuine disputes of material fact preclude summary judgment. (Pl.'s Resp. Br. in Opp'n to Def. South Fulton's Mot. for Summ. J., at 2; Pl.'s Resp. Br. in Opp'n to Def. Muhammad's Mot. for Summ. J., at 2). The Court begins by addressing the § 1983 claim against Muhammad.

Muhammad argues that he is entitled to summary judgment on Coleman's § 1983 claim because he did not violate Coleman's rights either by

---

[2] Pursuant to Local Rule 5.1(D), all briefs should have "a left margin of not less than one (1) inch."

detaining him on suspicion of obstruction under O.C.G.A. § 16-10-24(a) or using excessive force in detaining him and because he is entitled to qualified immunity. (Br. in Supp. of Def. Muhammad's Mot. for Summ. J., at 8–19). Coleman argues, in response, that his detention was unlawful because he did not obstruct Muhammad in the lawful discharge of his duties, that Muhammad used excessive force in detaining him, and that Muhammad is not entitled to qualified immunity. (Pl.'s Resp. Br. in Opp'n to Def. Muhammad's Mot. for Summ. J., at 8–17). The Court addresses the issues of unlawful detention, excessive force, and qualified immunity in turn.

### A. Unlawful Detention

The Fourth Amendment protects individuals from unreasonable searches and seizures by government actors. U.S. Const. amend. IV. "Not all interactions between law enforcement and citizens, however, implicate the scrutiny of the Fourth Amendment." *United States v. Jordan*, 635 F.3d 1181, 1185 (11th Cir. 2011). "Only when the officer, by means of physical force or [a] show of authority, has in some way restrained the liberty of a citizen may [a court] conclude that a 'seizure' has occurred." *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968). The Eleventh Circuit has "categorized encounters between police and citizens into three types, with varying levels of Fourth Amendment scrutiny: '(1) police-citizen exchanges involving no coercion or detention; (2) brief seizures or investigatory detentions; and (3) full-scale arrests.'" *Jordan*, 635 F.3d at 1185 (quoting *United States v. Perez*, 443 F.3d 772, 777 (11th Cir.

2006)). At issue in the present case is the second category.

> [T]he Fourth Amendment does not prohibit a police officer, in appropriate circumstances and in an appropriate manner from approaching a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest. That is, law enforcement officers may seize a suspect for a brief, investigatory *Terry* stop where (1) the officers have a reasonable suspicion that the suspect was involved in, or is about to be involved in, criminal activity, and (2) the stop was reasonably related in scope to the circumstances which justified the interference in the first place. While reasonable suspicion is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence, the Fourth Amendment requires at least a minimal level of objective justification for making the stop. Again, we look to the totality of the circumstances to determine the existence of reasonable suspicion.

*Jordan*, 635 F.3d at 1186 (quotation marks, alterations, and citations omitted). Finally, the Eleventh Circuit applies four factors in determining whether an encounter constituted a *Terry* stop or an arrest: "[1] the law enforcement purposes served by the detention, [2] the diligence with which the police pursue the investigation, [3] the scope and intrusiveness of the detention, and [4] the duration of the detention." *United States v. Acosta*, 363 F.3d 1141, 1146 (11th Cir. 2004).

Muhammad contends here that he had reasonable suspicion to detain Coleman for committing the crime of misdemeanor obstruction in violation of O.C.G.A. § 16-10-24(a). (Br. in Supp. of Def. Muhammad's Mot. for Summ. J., at 9). The Georgia statute provides that "a person who knowingly and willfully obstructs or hinders any law enforcement officer . . . in the lawful discharge of

his or her official duties shall be guilty of a misdemeanor." O.C.G.A. § 16-10-24(a). "The obstruction statute is sufficiently broad to cover actions which might not be otherwise unlawful, but which obstructed or hindered law enforcement officers in carrying out their duties." *Patrick v. Andrews*, 356 Ga. App. 801, 804 (2020). In addition, "argument and stubborn obstinance are all examples of conduct that may satisfy the obstruction element" of the statute. *Tisdale v. State*, 354 Ga. App. 735, 738 (2020) (citation omitted).

The Court concludes that Muhammad has carried his burden to establish reasonable suspicion in detaining Coleman for obstruction under O.C.G.A. § 16-10-24(a) as a matter of law. The video evidence capturing the encounter between Muhammad and Coleman shows, at the very least, a minimal level of objective justification for making the stop, considering Muhammad's instruction to "assist [him] by getting back in [his] car" and Coleman's decision to ignore that instruction and to proceed to approach the scene of the accident. (Coleman Video, at 2:10–2:30). And Coleman's decision to ignore Muhammad's instruction undoubtedly established Muhammad's reasonable suspicion to detain Coleman for hindering his discharge of his lawful duties in controlling the scene and completing the accident report.

In addition, the Court concludes that the four *Terry* stop factors favor a finding of lawful detention. Under the first factor, Coleman's detention served the law enforcement purpose of allowing Muhammad to keep the scene of the accident clear and free from civilians and to complete the accident report.

7

Under the second factor, "[n]othing in the record indicates that [Muhammad was] less than prompt in carrying out [his] on-the-scene investigation." *Acosta*, 363 F.3d at 1146. He immediately informed his supervising officer that he had detained a person at the scene of the accident for obstructing his investigation, and that supervising officer reported to the scene within 20 minutes of Muhammad's phone call. (Muhammad Video 2, at 2:28–2:48, 20:55). Under the third factor, the Eleventh Circuit has made clear that "an investigatory stop does not necessarily ripen into an arrest because an officer draws his weapon, handcuffs a suspect, orders a suspect to lie face down on the ground, or secures a suspect in the back of a patrol car." *Acosta*, 363 F.3d at 1147 (citations omitted). Here, Muhammad drew his taser, handcuffed Coleman, and placed him into the back of his patrol car, but such intrusiveness does not necessarily constitute a de facto arrest. Finally, the duration of Coleman's detention lasted roughly 29 minutes, (Muhammad Video 2, at 0:30–29:00), which is "not beyond the pale of reasonableness for *Terry* stops." *Acosta*, 363 F.3d at 1148. Therefore, Muhammad is entitled to summary judgment on Coleman's § 1983 claim as to his alleged unlawful detention.

### B. Excessive Force

"Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham v. Connor*, 490 U.S. 386, 396 (1989). And the Eleventh Circuit "has made clear

that some use of force by a police officer when making a custodial arrest is necessary and altogether lawful, regardless of the severity of the alleged offense." *Durruthy v. Pastor*, 351 F.3d 1080, 1094 (11th Cir. 2003). Accordingly, "the application of de minimis force, without more, will not support a claim for excessive force in violation of the Fourth Amendment." *Id.* (citation omitted).

The Court concludes that the force that Muhammad employed to detain Coleman was not excessive as a matter of law. Coleman argues that Muhammad's "aggressively grabbing [his] phone out of his hand" and "purposefully placing overly tight handcuffs" on him constitute excessive force. (Pl.'s Resp. Br. in Opp'n to Def. Muhammad's Mot. for Summ. J., at 12). But the Eleventh Circuit has held that "grabb[ing the plaintiff] from behind by the shoulder and wrist, thr[owing] him against a van three or four feet away, knee[ing] him in the back and push[ing] his head into the side of the van, search[ing] his groin area in an uncomfortable manner, and handcuff[ing] him" did not constitute excessive force. *Nolin v. Isbell*, 207 F.3d 1253, 1255 (11th Cir. 2000). Because Coleman's allegations of excessive force do not even rise to the level that the Eleventh Circuit has condoned in prior cases, Muhammad is entitled to summary judgment on Coleman's § 1983 claim as to his alleged excessive force.

### C. Qualified Immunity

"Qualified immunity protects government officials performing discretionary functions from suits in their individual capacities unless their

9

conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known." *Gates v. Khokhar*, 884 F.3d 1290, 1296 (11th Cir. 2018) (citation omitted).

> A defendant who asserts qualified immunity has the initial burden of showing he was acting within the scope of his discretionary authority when he took the allegedly unconstitutional action. Assuming the defendant makes the required showing, the burden shifts to the plaintiff to establish that qualified immunity is not appropriate by showing that (1) the facts alleged make out a violation of a constitutional right and (2) the constitutional right at issue was clearly established at the time of the alleged misconduct.

*Id.* at 1297 (citations omitted). Coleman claims that Muhammad violated his First Amendment right to videotape police conduct. (Pl.'s Resp. Br. in Opp'n to Def. Muhammad's Mot. for Summ. J., at 14 (citing *Smith v. City of Cumming*, 212 F.3d 1332, 1333 (11th Cir. 2000))). Muhammad argues that *Smith* does not constitute fair notice to officers facing situations similar to the one he faced here because *Smith* does not establish the "right to record police activity *from within the scene of an accident.*" (Br. in Supp. of Def. Muhammad's Mot. for Summ. J., at 17–18).

In *Smith*, the Eleventh Circuit established that individuals have "a First Amendment right, subject to reasonable time, manner and place restrictions, to photograph or videotape police conduct." *Smith*, 212 F.3d at 1333. But the Eleventh Circuit has subsequently opined that the right that it articulated in *Smith* "came without much explanation," thereby "making it difficult to determine the context of the First Amendment right it recognized." *Crocker v.*

*Beatty*, 995 F.3d 1232, 1241 (11th Cir. 2021) (citation omitted). Heeding the Supreme Court's warning against "defin[ing] clearly established law at a high level of generality," the Eleventh Circuit in *Crocker* declined to extend the broad right articulated in *Smith* to a plaintiff who was "spectating on the median of a major highway at the rapidly evolving scene of a fatal crash" and taking photographs of the accident. *Id.* (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011)). Under those circumstances, the court held that the right articulated in *Smith* did not apply with "obvious clarity to the circumstances" and therefore affirmed the district court's grant of qualified immunity to the officer who arrested the plaintiff at the scene of the accident. *Id.* at 1243 (citation omitted).

The Court concludes that the principles governing *Crocker* also apply here to afford Muhammad qualified immunity. As in *Crocker*, the existing law in *Smith* is not "so clear that, given the specific facts facing this particular officer, one must conclude that every reasonable official would have understood that what he is doing violates the Constitutional right at issue." *Id.* at 1242 (citation omitted). Rather, Muhammad appears to have been well within his discretion to detain Coleman for obstruction under O.C.G.A. § 16-10-24(a) because Coleman hindered his ability to keep the scene of the accident safe and to complete the accident report. Therefore, even if Coleman had prevailed on his § 1983 claims for unlawful detention and excessive force against Muhammad—he didn't—Muhammad would be entitled to qualified immunity

11

on Coleman's claims.

Because Muhammad is entitled to summary judgment on Coleman's § 1983 claims against him, the Court declines to exercise supplemental jurisdiction over the remaining state law claims against Muhammad and South Fulton. *Ingram v. Sch. Bd. of Miami-Dade Cnty.*, 167 F. App'x 107, 108–09 (11th Cir. 2006). Accordingly, the Court remands the case to the Fulton County Superior Court for consideration of those claims.

## IV. Conclusion

For the foregoing reasons, the Defendant South Fulton's Motion for Summary Judgment [Doc. 26] is DENIED, and the Defendant Muhammad's Motion for Summary Judgment [Doc. 28] is GRANTED in part and DENIED in part. Muhammad's Motion [Doc. 28] is GRANTED as to the § 1983 claim against him and DENIED as to the remaining state law claims. The Clerk is DIRECTED to remand this case to the Fulton County Superior Court.

SO ORDERED, this __10th__ day of May, 2023.

/s/ Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge